Plaintiff 1

[FedEx USA Airbill form, handwritten entries:]

Date: 2-19-03
Tracking Number: 8235 6145 8483
Sender's FedEx Account Number: 2162-4653-5
From: E. Fernandez
Phone: (302) 672-6383
Company: U.S. Dept of Justice/DEA
Address: 1012 College Rd., Suite 205
State: DE   ZIP: 19904

Internal Billing Reference: RAC

To: Tim Bucher
Phone: (302) 327-3700
Company: DEA
Address: 23 Southgate Blvd, Suite 105
Southgate Industrial Cntr
New Castle   State: DE   ZIP: 19720

Service: FedEx Standard Overnight (checked)
Packaging: FedEx Envelope/Letter (checked)
Payment: Sender (checked)

0154165697
0215
402

# Memorandum

| Subject | Date |
|---|---|
| Events Impacting Upon S/A Francisco X. Fernandez' Opportunities for the Group Supervisor Position at the Dover Post of Duty | 02/19/2002 |

| To | From |
|---|---|
| Gary O'Hara, ASAC<br>Philadelphia Field Division | S/A Francisco X. Fernandez<br>Senior Special Agent<br>Dover Post of Duty |

Thru: Tim Bucher
Resident Agent in Charge
Wilmington Resident Office

The following background information is provided in support of a request to meet with RAC Bucher, ASAC Gary O'Hara, and a neutral representative chosen by SAC Dempsey Jones, III in order to resolve the issue set forth in this memorandum.

On 02/15/02, I received a telephone call from RAC Tim Bucher requesting a response via memorandum as to why the DOVER POD's arrest stats were down from 10 arrests to 4 arrests for the periods covering October 2000 through January 2001 and October 2001 through January 2002. I was informed that the SAC was expecting a response. I promptly submitted a response via memorandum through RAC Bucher. I asked RAC Bucher what prompted this request and if there were any problems that I should be aware of. RAC Bucher did not know what or if anything was going on. We then spoke candidly about my career and other related matters. RAC Bucher was supportive and sympathetic with his answers. RAC Bucher added that he did not believe that he would be offered the opportunity to provide input as to a recommendation for the Group Supervisor slot in Dover.

Later on this same date, S/A Fernandez received a call from RAC Bucher regarding the Group Supervisor (GS) slot available at the Dover POD. It was obvious from the tone-of-voice and the remarks made by RAC Bucher during this telephone call that the sympathetic and supportive RAC that I had spoken with earlier had undergone a dramatic change. RAC Bucher stated he was asked if he would recommend me for the Dover Group Supervisor slot. RAC Bucher advised said caller, whose name was not provided by RAC Bucher, that he would not recommend me for the G/S slot. RAC Bucher stated that, when I first started at the Dover POD, he had complaints from the Task Force Officers (TFO's). I advised RAC Bucher that we had previously addressed this concern quite a while back and the problem stemmed from the fact that I had the responsibility of bringing the Dover POD into compliance with DEA policy and guidelines.

RAC Bucher is aware that the problems we had early on were minor to say the least and have been settled a long time ago. These sentiments have been relayed to RAC Bucher by several of the Dover Task Force personnel. During the last few months, we have had several Group meetings in order to discuss issues that affected our Dover office. Not once was there any comment as to any "new" or ongoing problems between the TFOs and myself. As a manager, one knows that whenever you have a new G/S you are always going to have issues that need to be addressed.

Are you going to tell me that there are G/S's within our Division that have absolutely no problems within their groups? Or have had no problems when they entered their new Groups?

I was replacing G/S Galietti who had been part of the Dover POD since its inception and had worked with the current TFOs from inception. Galietti's departure was not taken lightly by the TFOs and this fact was relayed to RAC Bucher prior to my arrival at the Dover POD. RAC Bucher was aware of the situation that I would be inheriting.

After I made these comments, RAC Bucher stated that there was still a "problem" but would not state what the problem or complaint was. I asked RAC Bucher if he would contact the TFOs and inquire of them if there was indeed a current problem. RAC Bucher stated that his recommendation would stand. I advised RAC Bucher that making those types of remarks would cause irreparable damage to my managerial career. I further informed RAC Bucher that there was no factual foundation for him to make those remarks. What is being done to my person is unjust.

On this same date, I spoke with TFOs Brian Moore, Lonnie Feaster and I/A Chris Callahan. They adamantly denied that there was a problem with my management style or any other problems with my person. TFO Moore stated that he and TFO Feaster recently commented to RAC Bucher of how well things were going on in the office and this also included a positive reference on my behalf. On this date, TFO Moore contacted RAC Bucher and advised him of how the TFOs felt. They assured RAC Bucher that there was no problem. They added that the problems that we had early on had been settled.

On this date, I also spoke with TFO Ron Marzec. TFO Marzec stated that he had recently spoken with RAC Bucher and advised RAC Bucher of the fact that, if it weren't for the actions of S/A Fernandez, the Michael TYRE investigation would have gone nowhere. TFO Marzec also agreed to the fact that there was no problem with my person.

  TFO Marzec agreed to speak with RAC Bucher and straighten out any misconceptions. On 02/18/02, I spoke with TFO Mailey who also agreed to the fact that there are no current issues or problems.

  Our office has recently achieved the largest known U.S. currency seizure in the State of Delaware. We have currently initiated several cases and are working closely with the U.S. Attorney's office (DE) on the prosecution of a major drug trafficking organization based on historical information. The seizures and the working relationships that we share reflect upon the positive efforts of our Dover office. It is not indicative of an office with internal strife or major problems.

  I have an excellent working relationship with those local Chiefs of Police that have requested our assistance. They are aware that I will go all out to help any department that needs our assistance. I am currently working with the Georgetown Police Department and Rehoboth Beach Department on a project/initiative that will assist them with their drug trafficking problems. I have broadened the cooperative nature of the Dover office by working with the Delaware State Police, F.B.I, A.T.F., and the I.R.S. I have worked jointly with the F.B.I, Wilmington and Dover offices during my tour on the Joint Terrorism Task Force. The relationships that I formed with those respective offices led to the utilization of an F.B.I confidential source and a joint investigation with the F.B.I. that furthered the Michael Tyre investigation.

  The remarks made by F.B.I. Supervisory Special Agent Jeff Troy as to my work ethics, investigative skills, and ability to work with several other State, Local, and Federal counterparts were well received. I am attempting to forge a closer working relationship with the U.S. Attorney's Office for the District of Delaware. Please contact AUSA's Richard Andrews, Bob Prettyman, and Shannon Hanson if you require their input.

  I have performed every task that has been asked of me at the Dover POD. From providing the necessary memorandum to upgrade the office to allow for a G/S slot, to handling the administrative matters of the office. I recently had to contact at least two of our vendors that had billed our office incorrectly. These invoices had been approved by our administrative staff for payment. Instead of contacting our administrative staff, knowing the administrative burden that they are currently under, I took the initiative and handled these matters on my own, keeping them abreast of the situation.

To add to my qualifications, both as an agent and a back-up supervisor, one only has to look at those comments noted by my supervisors on my previous evaluations or simply ask them. They will surely tell you that one of my key assets is the ability to work well with others, whether it is within the D.E.A., or other agencies in furtherance of D.E.A's goals and objectives.

One could interview those group members within our own Division to see the contributions that I have made to those enforcement/task force groups.

Prior to this date, no one had advised me of any ongoing or simmering problems within the Dover office. I am sure that this new "problem" would have been promptly brought to my attention prior to this date, especially during our RAC initiated internal staff meetings and our almost daily communications. To "pull this out of a hat" right before a decision on the Dover G/S vacancy slot, signifies that there are "external" issues that have nothing to do with my capabilities as a G/S. I hope that this is not a retaliatory measure undertaken by management based on events surrounding an ongoing EEO matter.

I would cordially request a meeting with RAC Bucher, ASAC O'Hara, and a representative chosen by SAC Dempsey Jones, III in order to resolve this issue. I would also encourage an independent interview of the TFO's at the Dover office and allowed the opportunity to provide whatever feedback might be required. Since the aforementioned facts have a profound affect on my opportunites for the current G/S vacancy, this issue should be resolved prior to the submission of the Dover G/S BQ list to the Career Board.

On a final note, I would just like to add that I have had an excellent working relationship with RAC Bucher and I will continue to support his efforts in enhancing the goals and objectives of the Dover Post of Duty.


CC: SAC Dempsey Jones, III